THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LARRY BASEMORE, M17380, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 3:26-cv-00145-GCS |
| ZACHARY HART, SGT. AGNE, AMANDA CHOATE, C/O WILSON, C/O FARRAR, B. KELLER, SANDY L. WALKER, ANTHONY B. JONES, ANTHONY WILLS, JACOB GUTERSLOH, KEVIN REICHERT, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Larry Basemore, an inmate of the Illinois Department of Corrections ("IDOC") who is currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, Basemore faults the defendants for their response to a mental health emergency, their alleged use of excessive force, the medical care rendered, and subsequent disciplinary proceedings.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1]  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Basemore alleges on December 15, 2024, he was on crisis watch at Menard when he informed Defendants Keller, Wilson, and Farrar that he had ingested a "line" covered in staples.  (Doc. 1, p. 5).  The three defendants did not immediately act and left the gallery.  Farrar and Wilson then returned with Defendant Hart who yelled he would not tolerate the behavior and commanded Basemore to take the line out of his mouth.  *Id.*  Basemore asked Hart for a sergeant, but Hart responded by deploying mace and Hart refused further aid.  *Id.* at p.5-6.

Shortly thereafter Basemore saw Defendant Agne and informed Agne he had swallowed the line and Hart had maced him.  (Doc. 1, p. 6).  Agne cuffed Basemore up and walked him to the healthcare unit.  *Id.*  Once placed in a room, Basemore overheard Defendant Amanda indicating she did not want to send him out for emergency care because she did not feel like completing paperwork.  *Id.*  Basemore alleges Hart then

---

[1]     The Court has jurisdiction to screen Plaintiff's Complaint in light of his consent to the full jurisdiction of a magistrate judge (Doc. 7) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the IDOC, Wexford, and this Court.

entered the room, ripped the line out of Basemore's mouth, and beat him with the mace can. *Id.* at p. 7.

At some point, Defendant Keller asked Basemore how he felt and Basemore reported the pain and assault, but Keller did nothing. (Doc. 1, p. 7). Defendants Farrar and Wilson then arrived, applied handcuffs, and refused Basemore's pleas for care. Agne stood by and directed Basemore to return to his cell. Basemore alleges that he was escorted back to his cell, and upon arrival at the cell, Farrar, Wilson, Hart, and Agne all participated in pulling his cuffs despite his exclamations of pain. *Id.* at p. 7-8.

Basemore was eventually escorted back to the healthcare unit, at which point Defendant Amanda allegedly agreed with a doctor that Basemore would need to be seen at an outside facility to assess his severely swollen wrist. (Doc. 1, p. 8). Basemore was escorted to a hospital. He alleges upon return to the prison, he was placed in a crisis watch cell with no running water. He remained in that cell until December 27, 2024. In the interim, he saw his father on a video visit, and he alleged his father vowed to contact the governor's office. *Id.* at p. 9. Basemore alleges an officer photographed his injuries after his father contacted Springfield.

After Basemore was released from crisis watch, he faced a disciplinary ticket before Defendants Walker and Jones. (Doc. 1, p. 9). He alleges he told Jones and Walker he did not assault anyone, but no investigation was done, and he received 3 months in restrictive housing. *Id.* He faults Defendant Wills for signing off on the discipline and Defendants Gutersloh and Reichert for signing off on his grievance about the discipline. *Id.* at p. 9-10.

Basemore sues the defendants in their individual and official capacities.  (Doc. 1, p. 11-12).  He seeks money damages, a prison transfer, and medical care for his alleged injuries.  *Id.* at p. 13.  Basemore attached an assortment of documents to his complaint including grievances, medical records, prison financial records, and disciplinary documents.  *Id.* at p. 15-45; (Doc. 1-1).

**DISCUSSION**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:**   **Eighth Amendment deliberate indifference claim against Defendants Wilson, Farrar, Keller, Agne, and Hart for declining initial medical/mental health assistance when Basemore reported that he had swallowed a foreign object on December 15, 2024;**
>
> **Count 2:**   **Eighth Amendment excessive force claim against Defendants Hart, Wilson, Farrar, and Agne for the alleged force used on December 15, 2024;**
>
> **Count 3:**   **Eighth Amendment deliberate indifference claim against Defendant Amanda for refusing initial medical care on December 15, 2024;**
>
> **Count 4:**   **Fourteenth Amendment due process claim against Defendants Walker, Jones, Wills, Gutersloh, and Reichert concerning discipline Basemore received as a result of the December 15, 2024, incidents.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned

in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

## OFFICIAL CAPACITY CLAIMS

Basemore sues all defendants in their official and individual capacities. (Doc. 1, p. 11-12). Claims for monetary damages may only be pursued against state officials in their individual capacities. *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against all defendants are dismissed without prejudice.

## Counts 1 & 3

Under the Eighth Amendment, inmates are entitled to adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the first step of the analysis, a serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Some of the indications of a serious medical condition include whether if untreated it could result in "further significant injury or unnecessary and wanton infliction of pain," it "significantly affects an

---

[2]    *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

individual's daily activities," or it features "chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (cleaned up).  At the second step, to determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind.  *See Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).  An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.*  Deliberate indifference is a culpability standard akin to criminal recklessness.  *See Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

For an inmate to demonstrate that a non-medical prison employee exhibited deliberate indifference to a medical need, he must establish a serious medical condition, and he must establish that an official knew that a serious risk existed and recklessly disregarded the situation or took woefully inadequate actions.  *See, e.g.*, *Eagan v. Dempsey*, 987 F.3d 667, 693-698 (7th Cir. 2021) (assessing an inmate's deliberate indifference claims against prison guards whom he interacted with during a bout of self-harming behavior).

Basemore's allegations are sufficient to proceed at this juncture against the staff and medical professionals that he associates with his first attempt to get care on December 15, 2024.  Basemore specifically alleges he was on crisis watch when he alerted Defendants Keller, Wilson, Farrar, and Hart that he had ingested a "line" filled with staples, and he alleges they refused care without further consulting medical staff.  He also alleges that once he arrived at the medical unit, Defendant Amanda—a medical professional—refused care because she did not feel like completing paperwork.  After Amanda allegedly refused care, Basemore pleaded further with Agne and Agne refused

action.  This series of events is sufficient to suggest at this early juncture that the named Defendants knew of a serious risk to his health and refused to act.

### Count 2

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010).  Basemore alleges Hart gratuitously sprayed him with mace, beat him with the mace can, and later participated in pulling his handcuffs and injuring his wrist.  He also alleges Wilson, Farrar, and Agne took turns pulling his cuffs despite his shouts of pain, and his wrist was further injured.  Basemore's allegations against Wilson, Farrar, Agne, and Hart are sufficient at this juncture to proceed under a theory that they utilized force greater than necessary on December 15, 2024.

### Count 4

Basemore faults Defendants Walker and Jones for finding him guilty in their roles on the adjustment committee, Defendant Wills for affirming their finding, and Defendants Gutersloh and Reichert for failing to investigate his grievance about the discipline.  Basemore alleges he received three months in restrictive housing, though he does not say anything about the conditions he faced in that placement.  Short terms of discipline only require informal due process protections.  Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in a written statement or hearing.  *See Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024).  Basemore does not allege that he lacked notice

of the disciplinary ticket, and he admits he spoke at the hearing, thus he has not established a due process violation.  Furthermore, he names Gutersloh and Reichert solely in association with the grievance review process, but the mere handling of grievances without any involvement in underlying misdeeds does not sustain a claim. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  Thus, Basemore's allegations in Count 4 are insufficient to proceed, and the defendants associated with these allegations will be dismissed without prejudice.

### MOTION FOR RECRUITMENT OF COUNSEL

Basemore seeks counsel based on his limited reading and writing skills, limited education, mental health, and inability to find his own counsel.  (Doc. 4).  When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *See Pruitt v. Mote*, 503 F.3d 647, 654–655 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020).  Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Basemore provided proof he contacted one entity, and attests that he wrote additional entities or lawyers that did not respond.  (Doc. 4, p. 1, 3).

Additionally, the Court must consider Basemore's competence to represent himself, and the complexity of the case. "Some of the circumstances that require judicial consideration are the phase of the litigation, if the prisoner has been transferred between facilities, if the claims involved the state of mind of the defendant such as those involving deliberate indifference, and if the case involves complex medical evidence, including expert testimony." *Thomas*, 951 F.3d at 860; *see Eagan*, 987 F.3d at 682–683. A case becomes increasingly complex as litigation enters later stages, particularly trial. *See Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). As for competence, "[a] judge will normally consider 'the plaintiff's literacy, communication skills, educational level, and litigation experience' along with any evidence in the record 'bearing on the plaintiff's intellectual capacity and psychological history.' But these are merely factors that are ordinarily relevant. No one factor is 'necessary or conclusive.'" *Jones v. Anderson*, 116 F.4th 669, 675-676 (7th Cir. 2024) (internal citations omitted). The court must examine specifically the plaintiff's ability to litigate the case, as opposed to the ability of any "jailhouse lawyer" assisting the plaintiff. *Eagan*, 987 F.3d at 682.

Here, Basemore alleges that his education, comprehension skills, and mental health all limit his ability to represent himself. While Basemore has multiple factors that weigh in favor of appointing counsel, this case is still at the very earliest phases of the litigation when tasks remain relatively simple. Now that the Court has reviewed the pleading, it will conduct service of process, and the next obligation lies with the defendants to answer. Once answers are filed, the Court will then be able to determine if this case will face an initial hurdle concerning Basemore's exhaustion of administrative

remedies.  The exhaustion stage of a case is usually rather straightforward and relies primarily on an inmate's own knowledge of the steps he took to file grievances.  Even for inmates with limited legal knowledge or communication skills, the exhaustion phase is often manageable because it is closely led by the Court's detailed scheduling order.  Given that this case is still at this very early phase, and that many of the next steps will be led by the Court and the defendants, the Court is not yet persuaded that Basemore needs counsel.  However, as this case proceeds to later stages, the Court will gladly entertain a new motion for recruitment of counsel so that it can better assess Basemore's ability to proceed as the case gets more complex.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Count 1** of the Complaint may proceed against Defendants Hart, Agne, Wilson, Farrar, and Keller, **Count 2** may proceed against Defendants Hart, Agne, Wilson, and Farrar, and **Count 3** may proceed against Amanda Choate.  By contrast, **Count 4** is insufficient as pled against Defendants Walker, Jones, Wills, Gutersloh, and Reichert, and the Clerk of Court shall **TERMINATE** Defendants Walker, Jones, Wills, Gutersloh, and Reichert.

The Clerk of Court is **DIRECTED** to prepare for Defendants Zachary Hart, Sgt. Agne, Amanda Choate, C/O Wilson, C/O Farrar, and B. Keller: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of

Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with

this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  *See* FED. R. CIV. PROC. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Basemore's Motion for Recruitment of Counsel (Doc. 4) is **DENIED** without prejudice.  Basemore's Motion to Compel a Trust Fund Statement (Doc. 3) is **DENIED** as **MOOT** because his *in forma pauperis* status has since been resolved, and he has already paid his initial partial filing fee.  (Doc. 9, 10, 11).

**IT IS SO ORDERED.**

**DATED:  April 21, 2026.**

Digitally signed by Judge Sison
Date: 2026.04.21 12:21:10 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed as a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of the evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.